**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20009,

      Plaintiff,

      v.

U.S. DEPARTMENT OF HOMELAND SECURITY,
Washington, D.C. 20528

      Defendant.

Civ. Action No. 18-545

---

**COMPLAINT FOR INJUNCTIVE RELIEF**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief to secure the release of agency records requested by Plaintiff Electronic Privacy Information Center ("EPIC") from the U.S. Department of Homeland Security ("DHS").

2.      EPIC challenges the DHS's failure to make a timely decision concerning EPIC's request for records pertaining to the agency's drone policies and procedures, as well as the agency's failure to release any responsive records. EPIC seeks injunctive and other appropriate relief.

**Jurisdiction and Venue**

3.      This Court has both subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(6)(E)(iii) and 552(a)(4)(B). This Court has personal jurisdiction over Defendant DHS.

4.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

5.    Plaintiff EPIC is a nonprofit organization, incorporated in Washington, D.C., established

in 1994 to focus public attention on emerging privacy and civil liberties issues. Central to EPIC's

mission is oversight and analysis of government activities. EPIC's Advisory Board includes

distinguished experts in law, technology, and public policy. EPIC routinely disseminates

information to the public through the EPIC website, the EPIC Alert, and various other news

organizations. EPIC is a representative of the news media. *EPIC v. Dep't of Def.*, 241 F. Supp.

2d 5, 15 (D.D.C. 2003).

6.    Defendant DHS is a federal agency within the meaning of the FOIA, 5 U.S.C. §

552(f)(1). Defendant DHS is headquartered in Washington, D.C.

## Facts

### Background

7.    The use of Unmanned Aerial Systems ("UAS" or "drones") by the federal government

for domestic surveillance raises substantial privacy and civil liberties concerns.[1]

8.    The technical and economic limitations to aerial surveillance in the United States change

dramatically with the advancement of drone technology.

9.    At a Congressional oversight hearing in 2013, Senator Dianne Feinstein stated that "the

greatest threat to the privacy of Americans is the drone and the use of the drone and the very few

regulations that are on [drones] today."[2]

---

[1] See EPIC, *Spotlight on Surveillance – DRONES: Eyes in the Sky* (Oct. 2014),
https://epic.org/privacy/surveillance/spotlight/1014/drones.html#_ftnref35; *See also* EPIC,
Domestic Unmanned Aerial Vehicles (UAVs) and Drones, https://epic.org/privacy/drones/.
[2] *Oversight of the Federal Bureau of Investigation: Hearing before the S. Comm. on the
Judiciary*, 113th Cong., 55:05 (C-SPAN broadcast Jun. 19, 2013, 55:05), https://www.c-
span.org/video/?313425-1/fbi-chief-defends-agency-practices-senate-hearing.

10.    DHS components that deploy drones for domestic surveillance include Customs and Border Protection, Immigration and Customs Enforcement, the United States Coast Guard, and the United States Secret Service.[3]

11.    In 2013, records obtained by EPIC under the Freedom of Information Act showed that the CBP is operating drones in the United States capable of intercepting electronic communications.[4]

12.    The records obtained by EPIC also indicate that the drones operated by CBP have the capacity to discern humans from other objects on the ground.[5]

13.    CBP drones have electro-optical/infrared sensors that allow recognition of human targets on the ground in various environmental conditions and surface search radar that will indicate a moving human target.[6]

14.    CBP drones can fly at an altitude of 50,000 feet and up to 20 hours.[7]

15.    The cameras on CBP drones are "capable of providing video at any altitude and allows operators . . . to take small scale aerial video images of buildings, vehicles, and people."[8]

16.    CBP has declared that they have the legal authority to conduct surveillance as far as 100 miles from the border.[9]

---

[3] DHS Science and Technology Directorate, *Enabling Unmanned Aircraft Systems* (May 3, 2017), https://www.dhs.gov/sites/default/files/publications/Enabling%20UAS.%20Factsheet.pdf.
[4] EPIC, *EPIC FOIA – US Drones Intercept Electronic Communications and Identify Human Targets*, Feb. 28, 2013, https://epic.org/2013/02/epic-foia---us-drones-intercep.html (record available at https://epic.org/privacy/drones/EPIC-2010-Performance-Specs-1.pdf.)
[5] *Performance Spec for CBP UAV System*, Bureau of Customs and Border Patrol, https://epic.org/privacy/drones/EPIC-2005-Performance-Specs-2.pdf.
[6] U.S. Customs and Border Protection, FACT SHEET: *Unmanned Aircraft System MQ-9 Predator B*, https://www.cbp.gov/sites/default/files/documents/FS_2015_UAS_FINAL_0.pdf.
[7] *Id.*
[8] U.S. Department of Homeland Security, *Privacy Impact Assessment for the Aircraft Systems*, 7 (Sept. 9, 2013), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-aircraft-systems-20130926.pdf.

17.     A 2015 DHS Inspector General report found the $360 million CBP drone program

ineffective.[10] "After 8 years, CBP cannot prove that the program is effective . . . . CBP has

invested significant funds in a program that has not achieved the expected results, and it cannot

demonstrate how much the program has improved border security," the Inspector General Report

concluded.[11]

18.     DHS is currently researching/testing various drone technologies and expects to

implement a network of drones "that will include small, medium, and large-sized [drones]

operating cooperatively with one another. . . ."[12]

19.     In 2017, DHS solicited proposals for drone sensor technology with a surveillance range

of three miles, the ability to track multiple targets persistently, and facial recognition capabilities

or other long-range biometric identification capability.[13]

20.     The DHS is subject to a Presidential Memorandum that requires the production of certain

reports concerning the deployment of drones within the United States.

21.     On February 15, 2015, President Barack Obama issued a Presidential Memorandum (the

"2015 Presidential Memorandum") concerning the domestic use of drones by the federal

government.[14]

---

[9] *See* U.S. Customs and Border Patrol, *Legal Authority for the Border Patrol* (last updated Nov. 13, 2015), https://help.cbp.gov/app/answers/detail/a_id/1084/~/legal-authority-for-the-border-patrol.
[10] Office of Inspector General, Department of Homeland Security, *U.S. Customs and Border Protection's Unmanned Aircraft System Program Does Not Achieve Intended Results or Recognize All Costs of Operations* (Dec. 24, 2014), https://www.oig.dhs.gov/assets/Mgmt/2015/OIG_15-17_Dec14.pdf.
[11] *Id.*
[12] DHS Science and Technology Directorate, *Enabling Unmanned Aircraft Systems* (May 3, 2017), https://www.dhs.gov/sites/default/files/publications/Enabling%20UAS.%20Factsheet.pdf.
[13] Department of Homeland Security, *Small Unmanned Aircraft System (sUAS), Solicitation Number: HSHQDC-16-R-00114* (Mar. 27, 2017) (April 27, 2017 Technical Call Document), https://www.fbo.gov/?s=opportunity&mode=form&tab=core&id=d2baf5dae6ef4c1df0519f83aa463b4d&_cview=0.

22.    At the time, President Obama stated "As UAS are integrated into the NAS [National Airspace], the Federal Government will take steps to ensure that the integration takes into account not only our economic competitiveness and public safety, but also the privacy, civil rights, and civil liberties concerns these systems may raise."[15]

23.    The 2015 Presidential Memorandum required federal agencies using drones in U.S. airspace to:

- Create and periodically re-examine "policies and procedures relating to the collection, use, retention, and dissemination of information obtained by [drones]";[16]

- Institute policies and procedures "that provide meaningful oversight of individuals" who have access to personally identifiable information collected by drones;[17]

- Establish procedures "to receive, investigate, and address, as appropriate, privacy, civil rights, and civil liberties complaints" arising from the use of drones;[18] and

- Publish within one year of the memorandum "information on how to access [the agency's] publicly available policies and procedures implementing this section."[19]

24.    The Presidential Memorandum also required federal agencies that deploy domestic drones to "make available to the public, on an annual basis, a general summary of the agency's

---

[14] President Barack Obama, *Presidential Memorandum: Promoting Economic Competitiveness While Safeguarding Privacy, Civil Rights, and Civil Liberties in Domestic Use of Unmanned Aircraft Systems*, The White House (Feb. 15, 2015), https://www.whitehouse.gov/the-press-office/2015/02/15/presidential-memorandum-promoting-economic-competitiveness-while-safegua.
[15] *Id.*
[16] *Id.* § 1(a).
[17] *Id.* § 1(c).
[18] *Id.* § 1(b).
[19] *Id.* § 1(e).

UAS operations during the previous fiscal year, to include a brief description of types or

categories of missions flown, and the number of times the agency provided assistance to other

agencies, or to State, local, tribal, or territorial governments."[20]

25.     The DHS has failed to comply with the transparency obligations set out in the 2015

Presidential Memorandum.

26.     The deployment of drones at the border implicates the privacy rights of Americans.

The DHS has recognized the significant risks to public safety arising from the domestic

deployment of drones.[21]

### EPIC's FOIA Request

27.     On September 9, 2016, EPIC submitted a FOIA request ("EPIC's FOIA Request"), as an

attachment via e-mail (as it does so routinely), to the DHS Privacy Office.

28.     The DHS Privacy Office replied that it would not process email attachments; EPIC

promptly resubmitted the FOIA request via fax on September 9, 2016.

29.     EPIC's FOIA Request sought records pertaining to DHS's use of drones, including the

reports required by the 2015 Presidential Memorandum Specifically, EPIC sought:

> (1) All policies and procedures concerning the collection, use, retention, and
> dissemination of information obtained by the DHS using drones/UAS.

> (2) All policies and procedures concerning the training and oversight of individuals who
> work on DHS drone/UAS programs and/or have access to personally identifiable
> information collected by the DHS using drones/UAS.

---

[20] *Id.* § 1(d)(iii).

[21] See, e.g., DHS, *Unmanned Aircraft Systems: Addressing Critical Infrastructure Security Challenge* (Feb. 2017), https://www.dhs.gov/sites/default/files/publications/uas-ci-challenges-fact-sheet-508.pdf; DHS Science and Technology Directorate, *Countering Unmanned Aircraft Systems* (May 3, 2017), *https://www.dhs.gov/sites/default/files/publications/Counter%20UAS%20Factsheet.pdf.*

(3) All policies and procedures concerning the DHS's processing of privacy, civil rights, and civil liberties complaints that arise from the DHS's use of drones/UAS.

(4) All annual summaries of DHS drone/UAS operations, publication of which is mandated by the presidential memorandum of February 15, 2015.[22]

(5) The status report required by the presidential memorandum of February 15, 2015.[23]

30.    EPIC sought "News Media" fee status under 5 U.S.C. § 552(4)(A)(ii)(II) and a waiver of all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii).

31.    EPIC also sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II).

32.    On February 2, 2017, EPIC called DHS to inquiry about the status of EPIC's FOIA Request. The agency informed EPIC that its FOIA request had been received and assigned number CBP-OAM-2017-002896.

### EPIC's Constructive Exhaustion of Administrative Remedies

33.    Today is the 544th day since DHS received EPIC's FOIA Request.

34.    Defendant DHS has failed to make a determination regarding EPIC's FOIA Request within the time period required by 5 U.S.C. § 552(a)(6)(A)(ii).

35.    EPIC has exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

### Count I

### Violation of FOIA: Failure to Comply with Statutory Deadlines

36.    Plaintiff asserts and incorporates by reference paragraphs 1–35.

---

[22] President Barack Obama, *Presidential Memorandum: Promoting Economic Competitiveness While Safeguarding Privacy, Civil Rights, and Civil Liberties in Domestic Use of Unmanned Aircraft Systems*, The White House (Feb. 15, 2015), https://www.whitehouse.gov/the-press-office/2015/02/15/presidential-memorandum-promoting-economic-competitiveness-while-safegua.
[23] *Id*. § 1(e).

37.     Defendant DHS has failed to make determination regarding EPIC's FOIA request for 544 days and has thus violated the deadlines under 5 U.S.C. §§ 552(a)(6)(E)(ii)(I), (a)(6)(A)(ii).

38.     Plaintiff has constructively exhausted all applicable administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## Count II

### Violation of FOIA: Unlawful Withholding of Agency Records

39.     Plaintiff asserts and incorporates by reference paragraphs 1–35.

40.     Defendant DHS has wrongfully withheld agency records requested by Plaintiff.

41.     Plaintiff has exhausted all applicable administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

42.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Requested Relief

WHEREFORE, EPIC requests that this Court:

    A.  Order DHS to grant EPIC media status for the purposes of fee assessment;

    B.  Order DHS to grant EPIC a fee waiver;

    C.  Order DHS to grant EPIC expedited processing

    D.  Order DHS to disclose to EPIC all responsive, non-exempt records as expeditiously as possible;

    E.  Award EPIC costs and reasonable attorney's fees incurred in this action; and

    F.  Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

Marc Rotenberg, D.C. Bar# 422825
EPIC President and Executive Director

Alan Butler, D. C. Bar# 1012128
EPIC Senior Counsel

/s/ Jeramie D. Scott
Jeramie D. Scott, D.C. Bar # 1025909
EPIC National Security Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: March 8, 2018